

FILED
SEP 25 2007
SEP 25 2007
Judge David H. Coar
United States District Court

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

CHAPMAN KELLEY

    Plaintiff,

v.

CHICAGO PARK DISTRICT,

    Defendant.

Civil Action No. 04 C 7715

Honorable Judge David H. Coar

## DEFENDANT'S MOTION FOR JUDGMENT PURSUANT TO RULE 52(c)

1. Defendant respectfully requests that the Court enter judgment in its favor pursuant to Fed. R. Civ. P. 52(c), because the sworn testimony of both the Plaintiff and his expert establishes that "Wildflower Works" is site-specific art, and thus not protected by the Visual Artists Rights Act, 17 U.S.C. § 106A.

2. In his deposition, Chapman Kelley testified that Wildflower Works could not be relocated to another Chicago park, or even to another location within Grant Park, because "[t]he Wildflower Works is what in the art world is called a site specific work. It is not portable. **It is site specific.**" (Deposition of Chapman Kelley, 2/17/06, Page 27, attached hereto as Exhibit A)(emphasis supplied) He further explained that that is "because it has to relate to its surrounding and location." (*Id.*) Mr. Kelley rejected the characterization of Wildflower Works as a "garden," stating:

> Number one, it is not a garden. It is a painting, and a painting that is site specific to the particular area and its surroundings.
> When I came here I hired at my own expense airplanes, fixed wings, and helicopters to study the city and the city's various parks to choose a place where I could make a work that would satisfy my needs as a painter and a composition that was the – That is what we chose and that is what was designed for it.

*Id.* at 28.

3. Mr. Kelley also testified at trial that when he designed his work he designed it to include the air ducts which where specific to the site. (Ex. B, Chapman transcript, Pg 15).

> Q. And when you did the wildflower works, when you did that, did you design it to include those air ducts?
> A. Well of course, yes, they were part of it. They were considered because I wouldn't have done it there if I couldn't have, you know, included them as part of it.

4. His expert witness, Jane Jacobs, confirmed Wildflower Works' status as site specific at trial, stating repeatedly and unequivocally, "It is site-specific." (Ex. C, transcript page 29-30).

> Q. Mr. Kelley's work is site specific, isn't it?
> A. Yes, it is. It is site specific, yes.
> Q. In fact, you read Mr. Kelley's deposition. Mr. Kelley is someone who should have the ability to evaluate his own work as to what type of work it is, don't you think?
> A. I do.
> Q. And in his deposition, which you reviewed for your testimony, Mr. Kelley specifically referred to his work as site specific, didn't he?
> A. Yes.

5. Site-specific art is not protected by VARA. *Phillips v. Pembroke Real Estate, Inc.*, 459 F. 3d 128, 143 (1st Cir. 2006). In its September 13, 2007

2

Memorandum Opinion and Order, this Court recognized that if Wildflower Works is a site-specific work, "it still would not come within the protection of VARA." (September 13, 2007 Memorandum Opinion and Order, at 10-11.)

6. Rule 52(c) permits the court, during a trial without a jury and once a party has been fully heard on an issue, to "enter judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue...." Fed. R. Civ. P. 52(c). Rule52(c) allows the trial court to weigh evidence to determine whether the plaintiff has proven his case., *Ortloff v. United States,* 335 F.3d 652, 660 (7th Cir.2003) (citing *Collins v. Ralston Purina Co.,* 147 F.3d 592, 599 (7th Cir.1998)). Upon review, the Seventh Circuit evaluates the district court's " factual determinations under the clearly erroneous standard, giving ' due regard to the opportunity of the trial court to judge the credibility of the witnesses.' " *Collins,* 147 F.3d at 599 (quoting *Zeige Distrib. Co. v. All Kitchens, Inc.,* 63 F.3d 609, 612 (7th Cir.1995)).

7. Here, both Mr. Kelley and his expert, Ms. Jacobs, have testified unequivocally that Wildflower Works is site-specific. Therefore, under this Court's September 13, 2007 ruling and *Phillips,* the Plaintiff cannot invoke the protection of VARA, and the defendant is entitled to judgment on Counts I and II of the complaint.

3

## CONCLUSION

For the foregoing reasons, Defendant Chicago Park District asks that the Court enter judgment in its favor on Counts I and II of the plaintiff's complaint.

Respectfully submitted,

September 25, 2007

Nelson A. Brown, Jr.
David R. Donnersberger
Chicago Park District
541 North Fairbanks Court
Chicago Illinois 60611

Annette M. McGarry
McGarry and McGarry, LLC
120 North LaSalle Street, Suite 1100
Chicago, Illinois 60602

*Chapman Kelley v.*
*Chicago Park District #04 C 7715*

*Chapman Kelley*
*February 17, 2006*

*Marzullo Reporting Agency*
*345 North LaSalle*
*Suite 1605*
*Chicago, IL 60610*
*(312) 321-9365*

*Original File KELLEY.001, 142 Pages*
*Min-U-Script® File ID: 3353124565*

**Word Index included with this Min-U-Script®**


DEFENDANT'S EXHIBIT A

Page 1

[1] STATE OF ILLINOIS         )
                              ) SS.
[2] COUNTY OF C O O K         )
[3]
       IN THE UNITED STATES DISTRICT COURT
[4]    FOR THE NORTHERN DISTRICT OF ILLINOIS
                EASTERN DIVISION
[5]
[6]
   CHAPMAN KELLEY,            )
[7]
           Plaintiff,          )
[8]
       VS.                    ) No. 04 C 7715
[9]
   CHICAGO PARK DISTRICT,      )
[10]
           Defendant.          )
[11]
[12]
[13]    The deposition of CHAPMAN KELLEY, called
[14] by the Defendant for examination, pursuant to the
[15] Rules of Civil Procedure for the United States
[16] District Court, pertaining to the taking of
[17] depositions, taken before KATHLEEN T. MUHNE, a
[18] Certified Shorthand Reporter and Notary Public within
[19] and for the County of Cook and State of Illinois, At
[20] 541 North Fairbanks, Fifth Floor, Chicago, Illinois,
[21] on the 17th day of February, 2006, commencing at 12:00
[22] p.m.
[23]
[24]

Page 2

[1] APPEARANCES:
[2]      MR. RICHARD C. BALOUGH
         53 West Jackson Boulevard
[3]      Suite 956
         Chicago, Illinois 60604
[4]
             On behalf of the Plaintiff;
[5]
[6]
         CHICAGO PARK DISTRICT
[7]      BY: MS. JEANNE G. TOFT
         541 North Fairbanks
[8]      Suite 400
         Chicago, Illinois 60611
[9]
             On behalf of the Defendant;
[10]
[11]
[12]
[13]
[14]
[15]
[16]
[17]
[18]
[19]
[20]
[21]
[22]
[23]
[24]

Page 3

[1]                    INDEX
[2]
       WITNESS:
[3]
       CHAPMAN KELLEY
[4]
         Examination by Ms. Toft         5
[5]
[6]
       EXHIBITS:
[7]
         Deposition Exhibit No. 1        22
[8]      Deposition Exhibit No. 2        24
         Deposition Exhibit No. 3        38
[9]      Deposition Exhibit No. 4        54
[10]
[11]
[12]
[13]
[14]
[15]
[16]
[17]
[18]
[19]
[20]
[21]
[22]
[23]
[24]

Page 4

[1] (Witness sworn)
[2]     MS. TOFT: Good afternoon, Mr. Kelley. Have
[3] you ever — well, first of all, will you give us your
[4] full name for the record?
[5]     THE WITNESS: Chapman Kelley.
[6]     MS. TOFT: And that's —
[7]     THE WITNESS: K-e-l-l-e-y.
[8]     MS. TOFT: And Chapman is spelled just as it
[9] sounds, right?
[10]    THE WITNESS: Uh-huh.
[11]    MS. TOFT: Have you ever given a deposition
[12] before?
[13]    THE WITNESS: Yes.
[14]    MS. TOFT: Okay. So you are somewhat familiar
[15] with the ground rules?
[16]    THE WITNESS: Yes.
[17]    MS. TOFT: Okay. We will briefly review them
[18] anyway. We have got our court reporter here who is
[19] taking everything down, and if you would be kind
[20] enough to keep your voice up and all your answers
[21] verbal, it would make it — it would make her job
[22] easier and this proceeding would go a lot quicker.
[23] Okay?
[24]    THE WITNESS: Fine.

Page 25

[1] extension of the temporary Wildflower Works Display in
[2] Grant Park. Do you recall seeing that prior to today?
[3]   A: Pardon?
[4]   Q: Do you recall seeing this, this document,
[5] prior to today?
[6]   A: I saw it at some point, yes.
[7]   Q: Okay. And now at this point in time, as
[8] of March 29th, 1990, the temporary permit that you
[9] were granted was going to expire March 31, 1991,
[10] right?
[11]   A: Yes.
[12]   Q: And in the explanation portion, a bit of
[13] history of this garden is provided, and it says in
[14] 1984 the park district granted a permit to artist
[15] Chapman Kelley to present this display of wildflowers,
[16] and you have already testified that in fact you did
[17] receive a permit in 1984, and you did create the
[18] garden, right?
[19]   A: Yes.
[20]   Q: Okay. And again, in the summer of 1987,
[21] because the park district received numerous complaints
[22] about the maintenance, the planning and development
[23] committee requested you, the permittee, in May of 1989
[24] to relocate the wildflower display and you refused; is

Page 26

[1] that correct?
[2]   A: Walter Netsch wanted to do something else
[3] and we refused.
[4]   Q: And then the board revoked your permit;
[5] is that right?
[6]   A: Right.
[7]   Q: Okay. And then you filed suit in federal
[8] district court seeking an extension of your permit,
[9] right?
[10]   A: Yes. It is the first time I ever sued.
[11]   Q: Okay. And you felt that your First
[12] Amendment rights were being infringed upon in some
[13] fashion?
[14]   A: Yes, ma'am.
[15]   Q: In what fashion? Could you expand on
[16] that?
[17]   A: Walter Netsch had requested me to change
[18] the design of my painting, and when we refused to
[19] change the design of the painting he had it condemned,
[20] which is the basis of the First Amendment.
[21]   Q: Now, this, the Wildflower garden at the
[22] time of your lawsuit was existing on public land
[23] subject to a temporary permit, correct, that was
[24] granted to you?

Page 27

[1]   A: The temporary permit was granted as the
[2] lawsuit was going on. In other words, first came the
[3] ruling to take it out. Then we were granted a
[4] temporary permit, and then the park district tossed in
[5] the towel I guess you would say, and under the
[6] direction of the court gave us another temporary
[7] permit.
[8]   Q: Right. Right. But I want to back track.
[9] At the time that you filed the lawsuit though against
[10] the park district which wanted you to relocate the
[11] garden to either Lincoln Park or Jackson Park or
[12] somewhere else in Grant Park, you did not want to do
[13] that at the time?
[14]   A: The Wildflower Works is what in the art
[15] world is called a site specific work. It is not
[16] portable. It is site specific.
[17]   Q: It's not what? I'm sorry.
[18]   A: In the art world terms —
[19]   Q: No. I know site specific, but you said
[20] it is not —
[21]   A: It's not portable.
[22]   Q: Portable, okay.
[23]   A: As it is because it has to relate to its
[24] surrounding and location.

Page 28

[1]   Q: And what was so unique about that
[2] particular location, on top of the Monroe Street
[3] Garage in Daley Bicentennial Park, that this garden
[4] could not be created, recreated, planted somewhere
[5] else in Grant Park or in Lincoln Park or Jackson Park?
[6]   A: Number one, it is not a garden. It is a
[7] painting, and a painting that is site specific to the
[8] particular area and its surroundings.
[9]   When I came here I hired at my own
[10] expense airplanes, fixed wings, and helicopters to
[11] study the city and the city's various parks to choose
[12] a place where I could make a work that would satisfy
[13] my needs as a painter and a composition that was
[14] the — That is what we chose and that is what was
[15] designed for it.
[16]   Q: Okay. With all due respect to you, I
[17] will continue to refer to this as a garden. You may
[18] choose to refer to it as a painting if you like.
[19]   A: If you choose to be insulting, that's
[20] fine. I will try not to be in return.
[21]   Q: I just predicated my statement with
[22] saying with all due respect to you. I have no
[23] intention of being insulting to you. I have seen some
[24] of your paintings on canvas and I think they are quite

Page 137

[1] because people, bird watchers would come down there.
[2]   We had eagles. We had golden eagles
[3] hunting down there. In one recent year a group of us,
[4] three, and then a fourth one joined us, watched a
[5] golden eagle capture a full grown rabbit and devour it
[6] in less than a half hour, and it didn't leave any
[7] bones, no skin. It was a pile of the entrance. That
[8] is all that was left.
[9]   So there were no trees there, but there
[10] were large growings of wildflowers. So it was an
[11] additional environmental thing for birds that would
[12] come through?
[13]   Q: My question was, there have been
[14] additional plantings of trees out in that area, right?
[15]   A: How large can they grow in nine inches of
[16] soil?
[17]   Q: They are crab apples.
[18]   A: My purpose isn't to criticize what they
[19] have done. It's only to criticize what they have
[20] undone.
[21]   Q: And are you saying that your, that the
[22] Wildflower Works, the volunteers did all the
[23] maintenance for the garden?
[24]   A: Well, the Wildflower Works' volunteers

Page 138

[1] and I did them, did all of the maintenance in the
[2] flowering areas. Once a year when we asked them to do
[3] it the park district would go in with their mower
[4] machines and cut it back in the spring. Your
[5] architect and landscape architect with their planting
[6] people here had me giving a report and one asked —
[7] this was early on, and he said, it looks great during
[8] growing season, but what do you do the rest of the
[9] year? I said, well obviously, we can't have flowers
[10] in the winter, but I had said, once we get the public
[11] to accept what it is all about, we want to leave these
[12] plants where they grew silvery and oaken.
[13]   There is one plant that is very voracious and
[14] very competitive, golden rod, you know, which
[15] basically we don't want. It is much too competitive.
[16] But we would leave a few of them up just so while the
[17] other thing is silvery we hit that little bit of
[18] bright color. Now, to do that, because we didn't —
[19] we had never been able to find the solidago rigidia,
[20] the one that grew lower and was not supposed to be
[21] that competitive, we would leave a few of these up.
[22] But what we would do when we had enough of this
[23] blossoming, before the seeds would set, we would go in
[24] and cut the flowers up and put them in bags and get

Page 139

[1] them disposed of so they wouldn't increase the next
[2] year.
[3]   So there were many, many things we had to
[4] invent to deal with making this thing what we set out
[5] to do.
[6]   MS. TOFT: Do you have any questions, because I
[7] think I'm just about done? I was just going to look
[8] over my notes.
[9]   MR. BALOUGH: No. I will reserve all my
[10] questions.
[11]   MS. TOFT: Okay.
[12]   THE WITNESS: Thank you.
[13]   MR. BALOUGH: Thank you.
[14]   (Signature reserved)
[15]   (Witness excused)

Page 140

[1]         STATE OF ILLINOIS )
              ) SS.
[2]         COUNTY OF C O O K )

[4]   The within and foregoing deposition of
[5] the witness, CHAPMAN KELLEY, was taken before KATHLEEN
[6] T. MUHNE, C.S.R., a Notary Public, in the City of
[7] Chicago, County of Cook and State of Illinois, and
[8] there were present at the taking of said deposition
[9] Counsel as previously set forth.
[10]   The said witness was first duly sworn to
[11] tell the truth and nothing but the truth, and was then
[12] examined upon oral interrogatories.
[13]   The questions and answers were taken down
[14] in shorthand by the undersigned and
[15] computer-transcribed under my personal direction.
[16]   The foregoing is a true, accurate and
[17] complete record of the questions asked of and answers
[18] made by said witness at the time and place hereinabove
[19] referred to.

XCOT924.TXT

```
 1            IN THE UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF ILLINOIS
 2                      EASTERN DIVISION

 3
   CHAPMAN KELLEY,            )  No. 04 C 7715
 4                            )
                 Plaintiff,   )
 5                            )
           vs.                )  Chicago, Illinois
 6                            )
   CHICAGO PARK DISTRICT,     )
 7                            )  September 24, 2007
                 Defendant.   )  4:10 p.m.
 8
              EXCERPT OF THE TRANSCRIPT OF PROCEEDINGS
 9               BEFORE THE HONORABLE DAVID H. COAR

10

11 APPEARANCES:

12 For the Plaintiff:    MR. FRANK P. HERNANDEZ
                         716 Wayne Street
13                       Dallas, Texas  75223

14
   For the Defendant:    CHICAGO PARK DISTRICT
15                       541 North Fairbanks Court
                         Chicago, Illinois  60611
16                       BY:  MR. NELSON A. BROWN, JR.
                              MR. DAVID R. DONNERSBERGER
17
                         MCGARRY and MCGARRY
18                       120 North LaSalle Street
                         Suite 1100
19                       Chicago, Illinois  60602
                         BY:  MS. ANNETTE M. MCGARRY
20

21

22
                         PATRICK J. MULLEN
23                       Official Court Reporter
                  219 South Dearborn Street, Room 2128,
24                     Chicago, Illinois  60604
                             (312) 435-5565
25
                                                            2
```

Kelley - direct by Hernandez

Page 1



1  Q.  Yes.
2  A.  Yes, uh-huh.
3  Q.  And when you did Wildflower Works, when you did that, did
4  you design it to include those air ducts?
5  A.  Well, of course, yes, they were part of it.  They were
6  considered because I wouldn't have done it there if I couldn't
7  have, you know, included them as part of it.
8  Q.  Well, you had to work around them, didn't you?
9  A.  Well, I put the wildflowers around them, but I accepted the
10 fact that they were there.  So they became, in essence, I
11 guess, a certain element.
12 Q.  Were they essential to the Wildflower Works?
13 A.  Well, the Wildflower Works, when a concept includes
14 everything about a work and as such you take everything into
15 consideration, that was one of the things we took into
16 consideration.  You will notice that they're centered.  The
17 ellipses, my trademark, centered these so that they would be,
18 you know, an acceptable part.
19 Q.  Now, during the ten years that no permit existed, did you
20 ever receive any complaints?
21 A.  I have never received any complaint whatsoever about the
22 Wildflower Works except one I received in 1977 from Rich Faley.
23 We brought our scientist, Dr. Tom Allen, out, and they took
24 care of it.  I had a letter from Rich Faley saying --
25 Q.  That was on another wildflower project?

                                                            15

```
                    IN THE UNITED STATES DISTRICT COURT
                       NORTHERN DISTRICT OF ILLINOIS
                             EASTERN DIVISION

CHAPMAN KELLEY,                      )  No. 04 C 7715
                                     )
            Plaintiff,               )
                                     )
        v.                           )  Chicago, Illinois
                                     )  September 24, 2007
CHICAGO PARK DISTRICT,               )  10:00 a.m.
                                     )
            Defendant.               )  Bench Trial

                EXCERPT OF TRANSCRIPT OF PROCEEDINGS
                 BEFORE THE HONORABLE DAVID H. COAR

APPEARANCES:

For the Plaintiff:        MR. FRANK HERNANDEZ
                          716 Wayne
                          Dallas, Texas   75223


For the Defendant:        CHICAGO PARK DISTRICT
                          541 North Fairbanks Ct
                          Chicago, Illinois  60611
                          BY:  MR. NELSON A. BROWN, JR.
                               MR. DAVID R. DONNERSBERGER


                          McGARRY & McGARRY
                          120 North LaSalle Street
                          Suite 1100
                          Chicago, Illinois  60602
                          BY:  MS. ANNETTE M. McGARRY



                  TRACEY DANA McCULLOUGH, CSR, RPR
                          Official Court Reporter
                       219 South Dearborn Street
                              Room 1420
                         Chicago, Illinois  60604
                            (312) 922-3716
```

**DEFENDANT'S EXHIBIT C**

PDF created with pdfFactory trial version www.pdffactory.com

1  A. Yes.
2  Q. And in reading that deposition, Mr. Kelley indicated that
3  before he selected the actual site for the Wildflower Works, he
4  rented helicopters and airplanes to fly over the city to find
5  the perfect place for his work of art, correct?
6  A. Yes.
7  Q. And Mr. Kelley also indicated in his deposition, didn't he,
8  that he believed that the present location of where Wildflower
9  Works was located was really the only place that it could be
10 given the statement he wanted to make with his art?
11 A. In the City of Chicago, yes.
12 Q. Okay. What is site specific art?
13 A. Site specific art usually takes into consideration the
14 natural environment in which a work of art is installed. It
15 could be anything from a mural that is put into a public
16 building, to a lobby in a hotel, to a hill.
17 Q. One of the essence of -- the essence of a -- is the essence
18 of site specific art that somehow it has to be in the
19 particular location that it's in, and if you remove it from
20 that location, it loses the essence of its statement?
21 A. Sometimes, not always.
22 Q. Mr. Kelley's work is site specific, isn't it?
23 A. Yes, it is. It is site specific, yes.
24 Q. In fact, you read Mr. Kelley's deposition. Mr. Kelley is
25 someone who should have the ability to evaluate his own work as

PDF created with pdfFactory trial version www.pdffactory.com

1  to what type of work it is, don't you think?
2  A.  I do.
3  Q.  And in his deposition, which you reviewed for your
4  testimony, Mr. Kelley specifically referred to his work as site
5  specific, didn't he?
6  A.  Yes.
7  Q.  Now, you gave a definition of painting.  Would you also
8  consider that the Wildflower Works is, in fact, a piece of
9  landscape architecture?
10 A.  No, I would not.
11 Q.  You said that you considered his work to be a fine art?
12 A.  I do.
13 Q.  A fine art sort of exists before its own say because of its
14 quality?
15 A.  Correct.
16 Q.  Are you aware that there was a whole environmental
17 component that was part of this work of art?
18 A.  I am
19 Q.  Were you aware that Mr. Kelley also wanted to make a
20 statement that -- about the use of conserving water through the
21 use of wildflowers?
22 A.  Yes, I am?
23 Q.  That strictly isn't a fine art sort of notion, is it?
24 A.  It can be in such if you want me to expound as far as a
25 sculpture goes, could be also a foundation.  Absolutely.

PDF created with pdfFactory trial version www.pdffactory.com